Let me make sure the government is on the line. Mr. Capozzi, are you on the line? Yes, your honor. All right, Mr. Neutter, you can proceed. Thank you. Good morning, your honors. May it please the court, my name is Daniel Neutter. I represent the defendant appellant Pi Yang. We're here this morning because my client was affirmatively misadvised concerning the elements of the charge to which he pleaded guilty, so-called promotion money laundering. And as a result, he erroneously pleaded guilty to a crime for which he did not commit and for which there is no evidentiary support in the record. To understand what went wrong, we need to understand the differences between promotion money laundering, the offense to which my client pleaded guilty, and concealment money laundering, which is the offense to which he believed erroneously that he was pleading guilty. Now, the statute 18, I'm sorry, the statute 18 U.S.C. 1956 differentiates between promotion money laundering, which involves promoting the carrying on of a specified unlawful activity. And I'll mention specified unlawful activity in a moment because it's important. Whereas concealment money laundering, as the name suggests, is when you engage in a financial transaction in order to disguise- Mr. Neutter, the magistrate judge did explain promotion, right? But what the error was in adding some language about concealment. I mean, there's nothing missing, is that correct? No, I would absolutely disagree with that, Your Honor. I think the way that the magistrate judge presented the charge would lead a reasonable person to understand that either the specific intent of concealment or promotion would suffice. And in fact, this is exactly the exact scenario that happened in the case of United States v. Keith, which again, is not binding on this court. It's a Fourth Circuit case, but it's the identical circumstance where the judge- Mr. Neutter, the magistrate judge said, third, that you intended to promote the carrying on of the specific unlawful activity. Yes, exactly. That is the wrong element. He was- That's the right element. That was the right element, but then he said, comma, that you intended to conceal or disguise the nature, location, source, ownership, or the control of property believed to be the proceeds of a specified unlawful activity. And when the subsequent- Is there anything in the record to suggest that he would not have gone through with a guilty plea if that language, if the Well, there's no basis to find that he did do the promotion. Again, under this court's case law- That's not my question. My question is, is there anything to suggest that he would not have gone through with the plea agreement if the concealment language had been omitted? Well, yes, I think there is reason because he didn't do promotion money laundering. I mean, if he had been correctly advised, I mean, we have to anticipate a number of different things and how it would have all played out differently. Maybe they go to the government and say, hey, we'd be willing to plead to concealment, but not promotion because he didn't actually promote any activity. But I think the other- Wait a minute. Are you asking us to vacate so that you can go to trial? No, no, Your Honor. And the way I anticipate this happening is that it would be vacated. My client would be charged with the correct offense, and he would either plead directly to that and be resentenced, or perhaps a slightly different plea agreement could be negotiated. I think sort of the elephant in the room here is COVID, which my client certainly couldn't have anticipated. And certainly with the immigration dimension that COVID has imposed in denying my client the ability to gain a lot of compassionate release or furlough under 18 U.S.C. 3622, for which he applied and was not eligible due to his immigration status. And of course, Judge Wood certainly might not sentence him in the same way, knowing how much more severe the last 15 months of his sentence have been. I have another view of this case that isn't really in the briefs as I read them. And my beginning, he was charged with, as I understand it, in count two, with money laundering with the intent to promote the carrying on of that specified unlawful activity, correct? Yes. There's no mention of intent to conceal there, right? No, absolutely not. In the indictment. Okay, now we go to the language that was so troublesome throughout this, in which the magistrate judge uses both, but without a disjunctive, right? Well, the comma, I think- Let me be clear. I'm being too cryptic. Third, that you intended to promote the carrying on of the specified unlawful activity, comma, that you intended to conceal or disguise the nature, location, source, ownership of the control of property believed to be the proceeds of specified unlawful activity. So promote and conceal are combined in that one phrase, right? Without a disjunctive, at least that appears in the record. It could have been a stenographic error. Yes. And of course, this is all being heard and ultimately being translated into Mandarin. You know, my client is not a native English speaker. Okay, understood. So parsing this so closely- We don't know Mandarin, at least I don't. No, I do not either. Okay, so here we are, we're stuck with this record, right? Then we come to the actual allocution. And the allocution is at A39. Yes. And as I see it, there's no allocution of intent to promote. Exactly. Only to conceal. The financial, and the language is the following. The financial court, the financial transactions involved, were you trying to disguise the source of the money involved? Defendant, conceal. The court, you were trying to conceal the fact that the money was proceeds of judge transactions. Is that right? Yes, your honor. That was your intent in engaging in these transactions. Yes. So he allocutes to concealment, right? Yes. And then, and then later on, there's some other language at the sentencing. He refers to the fact that when he was incarcerated at the MCC, he realized how serious an impact drugs have on human beings, and how serious this money laundering is. Not only does it help criminals to legitimize equal proceeds, that is the concealment, but it also helps furtherance of crime, which is promotion, right? But that's an observation that he makes it at the sentencing. And then, and, and, and so where, where does he actually plead guilty to, to promotion? In the police? We, we don't think that he does. I think, again, we only think. Stop right there. Your point is that I guess that he pled guilty only to concealment. Yes, even though he was not charged with concealment, he pleaded guilty. So if you plead guilty to a crime that you're not charged with, both is both are money laundering, but one is that they have different, different mens rea components. Then, then, then it seems to me it's, it's similar to a person who is charged with going into a bank armed and, and holding up the bank, but pleads guilty to, to theft when the charge is armed robbery. And all he pleads guilty to is theft. Is that a legitimate guilty plea for the, for, for, for the crime of armed robbery? And here, is this a legitimate guilty plea or the crime of, of promotion? Only if my client understands what the elements are. That's the, the question is voluntary. That's right. But what is the evidence of his understanding? And the evidence of IC of his understanding is only in the allocution. Now there may be other things that were said to him and he may have read the indictment, but he's insisting on concealment on pages 839 through the rest. And there's, there's nothing, I don't mean to interrupt you, but just, just to, to agree that there's nothing to suggest and everything to suggest quite the opposite that he ever understands what the correct elements are that he is in fact charged with. And again, that's exactly what happened. There were some language in the plea agreement regarding promotion, right? And there's language, of course. And again, that is explicitly disjunctive, your honor. You know, that's, that's, that's section four of the plea agreement, which is the or, either or. Right. And that's the language that the magistrate judge used. If he put the or in, it would have been the same thing. But he didn't. But as far as we know, it didn't. But yeah, that's, that's an either or situation. So he could have, the language in the plea agreement was definitely in the, in the, in the disjunctive. Now, here's my point. That still doesn't get you out of the woods. It seems to me it might get you out of the woods, but does it really get you out of the woods? If in fact, there is strong evidence of promotion. And it appears that if the plea were and you're, you've told me that your objective is not to go to trial, your objective is to replead. Well, I, I strongly disagree that there is any evidence of promotion. And I think when you look at the cases, specifically United States v. Thorne, which is 317 F 3rd 107, United States v. Weisberg, W I S E B E R G 727 federal appendix one, which of course is not binding, but relevant. I mean, don't, don't those cases suggest or hold that, that you can promote by doing something that facilitates or continues the underlying illegal activity? I mean, you don't have to say my intent was to promote the illegal activity. My intent was to assist in the carrying on of the illegal activity. Isn't that enough for promotion? Well, I don't think so unless there actually is actual underlying illegal activity. That's why buying more narcotics promotes narcotics distribution, but simply having your knowledge, the facts that he acknowledged when he was, was stating what the basis was for his plea. It seems to me that they easily support a finding of intent to promote. He facilitated money laundering of hundreds of thousands of dollars that he believed. You need to move your microphone down. Oh, thank you. Sorry. He, he, he, he acknowledged that he facilitated money laundering of hundreds of thousands of dollars that he believed were the proceeds of narcotics dealings. And he offered, had offered himself as available to do more, uh, all of which was all of which facilitation would promote, would promote money laundering. So I, I, I very much challenge your proposition that there was nothing in this record that would support an intent to promote. If I can respond to that, please, your honor. Um, that's why the words specified on lawful activity are so important. And that is defined at 18 USC, 1956 C seven, because what my client is promoting are his own further money laundering activities, but that is not specified on lawful activity as the narcotics. What about the narcotics that he was facilitating? He was facilitating the concealment and disguising of it, but he was not of the money of the you're saying that somebody who, um, who drives the getaway car at a bank robbery is not facilitating bank robbery. He's only consolidating facilitating escape from bank robbery. That's no, I'm not, I'm not taking any position on, on bank robbery because I think bank robbery is an extremely, but the thing is that when you are facility, my point was that when you are facilitating an essential part, uh, one can't engage in the business of narcotics activity unless one conceals it. There are, there are things that there are things that are essential to the realization of the criminal activity. And one, when one facilitates some part of the, of the activity that's involved in the illegal activity, one is facilitating the overall illegal activity. If you facilitate any part, if you facilitate the transportation of the narcotics, the concealment, the whatever, you are facilitating the unlawful activity. Respectfully, your honor, that would render the entire concealment language mere surplusage because any concealment then would be promotion under that theory. And maybe not at all. Not at all. You might have a person who just does has, has a cells phony, phony cells, cells, phony pieces of paper that can reference tax deductions and takes a commission and offers, uh, and allow, allows a person to, to expense items, uh, uh, in their company that are, but the cash is taken out. Uh, that's, that's all concealment. And, uh, and, and it seems to me, you can have, you can have something that, um, is both concealment and both and, and promotion. Uh, and, um, you can have, and, and, and in this case, uh, it seems to me you have both, uh, anyway, you, I, I don't know, uh, uh, you know, I'm sure it's both because, uh, in later on government proffered, uh, in, um, there was evidence at sentencing during the sentencing that the government proffered that during conversations with the undercover agents, your client held himself out as somebody who, uh, had contact with international narcotics, Kilo weight traffickers, uh, and offered to the agents that he could facilitate further transactions. Well, again, your honor, I think that was promoting his own money laundering, which is not specified on lawful activity, but even in the, in the example that you gave me, I believe that judge Laval would say that, that, uh, that, that concealment is also facilitating the, the underlying narcotics activity. If it's anything that facilitates than any concealment is promotion. There's no, there's no Mr. Neuter. You, you responded to me by saying that would render the, the concealment language or the promotion language surplus age. Well, there's no iron clad rule that you can't have surplus age. And there are millions of statutes that in fact have a surplus age, that there's a general preference for not in, not interpreting statutes in a manner that could render, uh, uh, a part of them. But when you have statutes like this one, which lists a whole string, which lists a string of, of verbs, uh, that, that attempt to cover the waterfront and attempt to, to, to, to ham in on, on all sides to make sure nobody escapes, you're going to find surplus age. And, and that I don't think that would protect you in the argument that you're making in saying it can't be that the concealment, uh, of narcotics trafficking can be viewed as, as, as also facilitating the, the promotion. Um, uh, because I mean, I, I think that we would, we would lose millions of criminal convictions if one took that as an iron clad rule. Um, you're all over your time. Why don't you respond to judge LaValle and then we'll hear from the government. Okay. Uh, thank you very much, Judge Chin. In this case, there is something iron clad, Your Honor. It's this court's opinion in Pierre Venanzi 23 F 3rd 670. And the pinpoint site is 680 in which the, in which this court specifically looked at the language of 1956 and stated that Congress intended to create distinct offenses. So while it's true that some surplusage might exist in some statutes here, we have binding precedent on the issue that Congress intended to create distinct offenses. And there's not merely overlapping here. The entirety of concealment would be subsumed by, uh, by the promotion. And especially in cases where a client has been convicted of both concealment and promotion, which happened, for example, in Weisberg, you would have severe double jeopardy issues. If in fact, let's, let's hear from, we'll hear from the government. You have two minutes for rebuttal. Okay. Thank you. Good morning. May it please the court. I am Timothy Capozzi and I represent the government. In this case, I also represented the government below and I, I just like to begin, uh, where, uh, the other side left off. Um, uh, your honor, uh, your honors, there is, um, nothing, there is no dispute here that there are two different, uh, ways to commit money laundering, concealment money laundering, and promotion money laundering. And to pick up on some of the questions that your honors have made, there's the questions are whether or not there's an adequate factual basis for the plea here and whether or not the defendant was adequately informed of the nature of the charge to which he pled guilty. Uh, judges Walker and LaValle have pointed to multiple space, multiple places in the record that provide ample support from which, uh, to, to, to serve as a factual basis for a plea to propose promotional money laundering. Um, uh, PSR paragraph 13, uh, for example, is where it explicitly says that the undercover officers told the defendant that the money that he was moving constituted narcotics proceeds that needed to be moved to further narcotics traffic. And the record is replete with these type of examples, uh, from which, uh, a fact finder could, uh, find. I have a different, I have a different question here, Mr. Kaposi, and that is what crime did he actually plead guilty to? That's my question. Your honor, it's clear from the record, I believe. I'm not talking about whether there was a factual predicate. I think there was a factual predicate for everything, but that's, that's my view. But, but, but I'm, I'm concerned with what crime he actually pled guilty to and whether that can be, found to be harmless error. If in fact he pled guilty only to concealment, even though the indictment charged promotion. Your honor, the defendant here was initially charged in a complaint that included two counts, one promotional, um, money laundering and two, a conspiracy to commit promotional money laundering. The complaint, uh, specified that he was alleged to have, uh, uh, acted with the intent to promote. Then he's indicted again in two counts. Those indictments include a promotional money laundering count and a conspiracy to commit promotional money laundering. The indictment includes the, the allegation that he had the intent to promote. And then he signs on to a plea agreement that in clear terms, uh, has him agreed to plead guilty to count two in the indictment, which again, specifically says intent to promote. Then at the plea proceeding, uh, your honor, the, the, the magistrate judge confirms with the defendant that he has received a copy of the indictment. He's reviewed it. It's been translated for him. He's discussed it with his attorney. He's, he's satisfied with his defendant. Have you received a copy of the plea agreement? Have you reviewed it? Uh, uh, again, the defendant confirms that then we'll stop right there. Of course, the plea agreement has both promote and concealment in the, in the disjunctive number four, item number four, it does refer to the indictment. However, which as you point out is only promotion, right? Correct. I want to be very clear on that. I don't want to, but the problem is that what happened in court is what bothers me, uh, about this because he's insisting, uh, after, after the judge gives that ambiguous, uh, statement about, uh, the third element, uh, or, you know, multiple element, which has surplus agenda. Uh, he then allocutes and, and the allocution is, uh, during what period of time did you engage in the conduct you just described? I'm at eight 39 defendant September 16 to October 17. Uh, and then the court, the financial transactions involved, were you trying to disguise the source of the money involved? Defendant conceal the court. You were trying to conceal the fact that the money was the proceeds of the drug transactions. Is that right? Yes, your honor. That was your intent in engaging in these transactions. The promotion out of that language, your honor at that plea. Um, and, and I'll so just responding directly to that. I think what you have there is first, the magistrate, uh, uh, recites the elements. Again, he includes all of the actual elements of promotional money laundering, but then as you, as you have acknowledged, as we acknowledged, he appended additional surplus age related to an intent to conceal. Uh, he then proceeds, which, which, which, which apparently the defendant pled guilty to, I mean, I just read, all I did was read the three, the three sentences on page eight 39 and 40. I, I would respectfully disagree. I mean, elsewhere in the, in the, in the plea proceeding, he, the magistrate asked him if he intends to does. Uh, he never, he never says in actual words, I intended to promote, right? That, that, that is, that is true. Your honor. So what did he say anything without using the word promote? Did he say anything in the allocution to, to show that he was indeed continuing or furthering narcotics, uh, laundering, uh, uh, I'm sorry, narcotics activity that he understood that that's what he was doing. Well, your honor, I think when the, the magistrate initially asked him to allocute to what he had done, he gave an answer, which was consistent with either promotion or money laundering. And then what was that? Uh, that initial answer was sorry. Sure. Uh, eight 39, your honor. Um, so, so the court asked the defendant, can you tell us please what it is you did that makes you guilty of the offense charged in count two of the indictment 18 CR 33, the defendant, your honor, between September, 2016 to October, 2017, I attempted to conduct financial transactions knowing that the property involved were the proceeds of a that occurred in New York city. And I knew that what I was doing was wrong when I did it. That doesn't speak to the intent to promote that could be equally equivalent equivalent could equally refer to the intent to conceal. I, I, I, I agree your honor. And, uh, it's only then when the, when the magistrate asks, uh, what I would call leading questions, whether or not he acted with the intent to conceal that he responded. Yes. I had the intent to conceal now. No, it goes beyond that. Uh, the judge says the financial transactions involved, were you trying to disguise the source of the money involved? And then he inserts, doesn't say yes. He says, conceal a different word. The court, were you trying to conceal the fact that the money was involved in the proceeds? Yes, your honor. That was your intent in engaging in these transactions. Uh, now that, and there's no speaking of any other intent here. Uh, I, I just don't see how a plea is supposed to be very clear and understood. And it's such an important event. It substitutes for an entire trial. Uh, and, uh, the plea apart from all the, the, the factual underpinnings and, uh, you know, the, the factual basis for different components of what could have been pled to, I'm looking at the actual plea itself. What did he actually, what was the crime that he pled to? If you go into a bank with a gun and you robbed the bank and you charged with armed robbery, but you plead guilty to theft, uh, and they charge you with armed robbery and the factual basis is there for armed robbery. Uh, you're still only plead guilty to theft. Uh, so, uh, this is my problem with this. Let me ask you this. If I'm right, and the plea was, he pled guilty to the wrong crime, uh, or he pled guilty to a crime that wasn't charged, uh, but easily could have been, uh, it could have been part of the conspiracy or whatever. And there's plenty of evidence to support, uh, the, the, uh, promotion. Uh, is it possible to say that the error was, there was no substantial prejudice. We're, we're up here for plain error. I think, uh, is it possible to say that on the basis that, look, he, he pled guilty to what he pled guilty to, but if it goes back, it's mere formality, he would plead guilty, uh, again, uh, either to, to disguising or promotion. Properly charged. Well, your honor, we, uh, maybe an honest answer is it's sort of structural and can't, can't admit of, of harmlessness because it's, it's the plea. I mean, you know, the, the, the question on, on prejudice is, is, is, uh, the, the question is whether, um, but for the mistake or the error, uh, that was made with the defendant have not entered a guilty plea. And there's nothing, uh, uh, your honor, uh, that, uh, suggests that the defendant would not have entered a valid plea to, uh, promotional money laundering. One thing you have in your favor is that the, your adversary says he doesn't want to go to trial. Uh, yeah. So you go back and plead guilty to something. Uh, I just don't know whether you can, you can, uh, have, have whether the absence of prejudice is, is, is appropriate where the person pleads guilty to crime a, uh, when he's charged with crime B. I think there's a problem with the hypothetical that judge Walker just put you because it leaves out something essential to the facts here, which was in judge Walker's hypothetical. He did not include that the, that the, that the judicial official administering the plea included in describing included as an essential element of the offense, the, the essential element that was an element of the offense, offense charged in the indictment, because here the magistrate judge said as an essential element, the intent to promote and, and, and, and it was not in the disjunctive. So he pleaded guilty to a crime, which was correctly identified as count two of the indictment that he had, that he was charged with. And then that since the, since the complaint and that he had reviewed with his attorney and which the judicial official administrating the plea said was an essential element of what he was pleading guilty to, that was not part of the hypothetical that judge Walker was, was, was putting to you. He was And this is, this is, this is when oral argument gets to be a dialogue between the judges is if you have two possibilities of mens rea, one directed to one object and one directed to another, but it's the same crime, money laundering. But, but you have two different mens reas. Can you plead guilty with the evidence of one mens rea, plead guilty to one mens rea when what is charged is the other mens rea that's, you know, is that, is that okay? Your, your honor, I, I'm modifying my hypothetical a little bit, but I'm putting it into a more generic form. Your honor, I respectfully, I think there's, there's no there is ample evidence that the defendant was aware of what he was pleading guilty to and did in fact plead guilty to that. And furthermore, this court has regularly found valid guilty pleas without an allocution from the defendant as to every element. For example, the question is whether or not the defendant was adequately informed of the nature of the charge to which he pled guilty. And here there's much more than that. He didn't just receive a copy of the indictment, although he did that. He didn't just receive a copy of the plea agreement, although he did that. He was advised of the, of the elements. Again, there was an extra, extra language about the promote, about the concealment. But he was advised of it. And then at no point did the record suggest at all that he was confused about what was going on. And then furthermore, at sentencing, he talks about the fact that he was, he appreciated that money laundering, in fact, furthered narcotics, you know, narcotics. Unfortunately, that, that can cut against you, that particular passage. And the reason it can cut against you is because it's, it's, it's, he comes to that realization, he announces that plea was entered. And he says, after I was incarcerated in the Metropolitan Correction Center, I realized how serious an impact drugs, drugs have on human beings, how serious money laundering is. Not only does it help criminals to legitimize illegal proceeds, conceal, etc., but it also helps furtherance of crime. He came to that realization when he was locked up at the I just don't know that that necessarily works, make your argument for you. Well, I think I think, you know, it's subject to different interpretations. I think at a minimum, it shows that he was aware of the fact of a promotion of furtherance aspect of money laundering such that. Yes, he was. He said he came to that awareness after he was incarcerated at the MCC. I don't know whether when he was incarcerated at the MCC. Well, well, I mean, I think you're honored that it that an alternate understanding of that passage is that he appreciated how serious it was at that point. But furthermore, after saying that he took no steps to withdraw his guilty plea. If he thought there was something wrong with the plea, certainly he, he had an opportunity to do that. And he he made no objection at that point or no attempt to withdraw, which just further support the idea that there was no prejudice here. He had no intention of not pleading guilty. There may be no prejudice and maybe that's the way that's that's one way to to reform the conviction. The PSR notes that he was arrested on October 5th, 2017, and had remained in continuous custody since that date. So by the time we got to the the the plea, you know, he had he had been in custody for well over a year. Why don't you finish up, Mr. Kaposi? I finish up and then I'd like to add something. Go ahead, Judge LaValle. You go first. And then well, I just want to add a comment that doesn't have to do with the disposition of this appeal. But I I can't couldn't count the number of times that I have sat in appeals from problems on a guilty plea where the assistant United States attorney sat at the guilty plea figuratively with hands in pockets as if the United States attorney is simply a spectator at the guilty plea where the entire all the action takes place between the the judge and the defendant and the defendant's lawyer. And that is not the disposition of the role of the prosecutor at a guilty plea. Because guilty pleas, you have never been a judge. And looking at from the point of view of the judge, guilty pleas place a huge burden on the judge. They often occur without prior notice to the judge. And he hasn't had time to do elaborate preparation such as the U.S. attorney should have done and would have done. And the has to tell the defendants the elements of the offense and all kinds of telling the elements of the offense is not always easy to do. In this case, it was a mistake, a slip up. But sometimes the elements are quite complicated. And quite frequently, as I said, the United States attorney sits there with his hands in his pockets as the judge stumbles through a sometimes imperfect performance of it. And then we have a big mess on appeal like this. And who is responsible? There are several people who are responsible. But who is one of the people who is responsible? It's the assistant U.S. attorney who hasn't done his job of making sure that the plea allocution was properly conducted. And I don't know how many times I've had that situation before me as a judge of the Court of Appeals. Again and again and again. And I can barely remember how many times as a district judge, I struggled with getting together what are the elements of the offense, piecing it together from a complicated statute that sometimes cross-references another statute. And I did my best. But it would be good to have somebody there who is prepared for the event, who is seeing to it that the judge doesn't mess up the record. That's part of the assistant U.S. attorney's job. Do you think you could carry that message back to your troops as part of their responsibility when they are involved in any court proceeding in a criminal matter? I will, Your Honor. Paul, do you want to conclude? Yes, Your Honor, just briefly. Your Honor, in terms of the claim of ineffective assistance of counsel, the gravamon of that claim is, in the words of the opposition, is that the defense lawyer should have made an objection at the plea. Your Honor, because there's an adequate factual defendant was, in fact, adequately informed of the nature of the charge, any objection made by the defense attorney would not have been successful. There would have been no basis for the objection. And accordingly, this court can dispose of the ineffective assistance claim at this level. At a minimum, if the court is not inclined to do that, at a minimum, it should send it back to the district court to resolve it for further factual development. The other thing that can be done, and the cases make very clear, is that it could be made on a 2255 if we ended up affirming. That's an avenue that is always open, particularly if there are Correct, Your Honor. I should have been more clear. When I was saying could send it back down, I meant that the court could allow for the defendant in the first instance to file a 2255, which would allow the defense counsel an opportunity to respond to what transpired. But again, our position is that there's no need for that because there's no basis in the record to find any finding of objectively unreasonable representation here. Thank you, judges. All right. Mr. Nutter, you have two minutes for a rebuttal. Thank you, Your Honors. I just want to very briefly respond very quickly to an issue of Judge LaValle's, an issue of Judge Walker's, and quickly one issue that the government mentioned. To Judge LaValle, just with respect to the elements as they were stated at the allocution, you're right that it was not specifically in the disjunctive, but it was phrased in the appositional. That's appositional with an A, not oppositional with an O, which does not suggest two different elements. If I say I'm inviting the President of the United States, Joseph Biden, to dinner, I'm not inviting both the President of the United States and Joseph Biden. The comma suggests that the one is simply modifying and providing further explanation as to what the other one is. And here, when you read it, promotion is being defined as concealment or disguising. To Judge Walker, your hypothetical about the bank robbery, what distinguishes that is the theft is a lesser included offense of bank robbery. So that when he pleads to theft, all of the elements there are shown. Here, one is not a lesser included offense of the other because they have different mens rea elements. My hypothetical was a little different. My hypothetical was that the only charge was armed robbery. But Judge LaValle made a very good point there because there are facts that one would have to work on that hypothetical a little bit to make it clear. What's involved here are really two different mens rea components of the same crime. Yeah, well, which make them different crimes, in my opinion, under what period? Oh, no, I'm not. I'm not. I'm not. I'm not challenging that part. Finally, because anyway, the question is, what did he plead to? You know, what did he plead to? And if in fact, he pled guilty to only to concealment, then and that's not charged. They didn't. The judge did not. And the prosecutor can bring to the this is a promotional crime. He's got to plead guilty to promoting. And if he didn't do that, then that's a problem. And I would suggest, Your Honor, that what makes this so prejudicial is that my client never actually had the informed opportunity to decide whether or not he had actually done what the elements said that he had to have done because he understood throughout this process and until this appellate process, when I came into this, that concealment or disguise would have been sufficient. So so when we wonder what he might or might not have done, we can't answer that until we until he has that opportunity to know what the real elements are. And that's why when the government says, well, he could have objected later, he could have objected later because he didn't know. And in the two cases, the government cites Westcott and Rodriguez. I'm not I don't need to repeat all this because I wrote it in my reply brief. Do you? Mr. Nutter, I understand you to be saying that that you're making a factual assertion that your client believed at the time. Are you simply saying that the record can support this or are you telling us as the lawyer for your defendant that he, in fact, in his mind, believed at that time that he was charged with concealment and not with promotion? I don't I say it's subtly different from both of those. I think my client understood that a mens rea of concealment was sufficient to satisfy what he was charged with. So he believed when he allocated to the fact that he had the intent to conceal that that made him guilty of promotion. He didn't realize that promotion itself was different. Now, if your honor's position is that, in fact, concealment and promotion are exactly the same, which I strenuously disagree with. And I think that the case is very clear. I'm saying that I'm saying that in in in in in most in many and most maybe in all circumstances, um, uh, concealment would satisfy, uh, would satisfy that there's no reason why, uh, intent to promote couldn't be satisfied by by actions understood to be to be intending to conceal the narcotics. And respectfully, your honor, if this were not a sting, if there were actually any evidence, I think what I understood, Judge LaValle just to be asking whether by concealing the money laundering, aren't you also promoting the drug activity? Well, and I would say no, your honor, sometimes maybe, but not under these facts, not when there is no actual narcotics activity and where there's no evidence that he's ever been involved. We've gone way over in this case, but which has turned out to be a very interesting case. Thank you. Uh, thanks to both sides. We will reserve decision. Thank you very much.